### NEWBERN v. GOULD et al.

No. 21501. Opinion Filed Feb. 14, 1933.

RILEY, C. J. This is an action commenced by plaintiff in error to quiet the title to 150 acres of land in McClain county, and to remove as an alleged cloud upon his title, the claims of defendants alleged to have arisen by reason of a certain instrument purporting to convey certain mineral, coal, oil, and gas rights to Charles P. Gould. The instrument sought to be canceled is dated November 29, 1918, and reads:

"That M. B. Hawkins and Francis Hawkins, his wife, parties of the first part, in consideration of one dollar ($1) in hand paid, the receipt of which is hereby acknowledged, do hereby grant, bargain, sell, and convey unto Charles P. Gould, party of the second part, one-half (½) of the mineral, coal, gas, or oil located in or underlying the following described lands, in McClain county, Okla., to wit:

(Description)

"This conveyance shall not entitle second party to any portion of the surface of said land or the mineral, coal, oil and gas rentals, but only one-half interest in the mineral, coal, oil and gas located in or underlying the same."

The action was commenced against Charles P. Gould, but thereafter plaintiff discovered that Charles P. Gould had died, and his heirs, executors, etc., were made parties defendant. Leslie Gould, a daughter of Charles P. Gould, claiming to be the only person interested, as successor to the rights of Charles P. Gould in and to the premises, answered and alleged, in substance, that up to December 4, 1918, Charles P. Gould was the owner in fee of the land involved; that theretofore he had employed S. C. Newbern as agent, for compensation, to find a purchaser therefor at a price certain, upon express terms; that one-half interest of the mineral, coal, gas and oil located in or underlying said land should be retained by and reserved to him, and excepted from the grant to be made to such purchaser; that plaintiff found a prospective purchaser and advised Gould thereof, by letter, and that plaintiff knew and understood the interest to be retained by Gould, and stated in a letter: "It is understood about one-half of the oil, gas, etc., to be retained by you;" that Gould had instructed plaintiff in writing to have the deed prepared and sent to him for his signature; that plaintiff did prepare and mail it to Charles P. Gould, and in a letter enclosed therewith stated:

"In regard to the ½ interest in the oil, gas, mineral, etc., there is a special form on which to have this made which I will make

Blanton, Osborn & Curtis, for plaintiff in error.

L. D. Threlkeld and R. E. Owens, for defendants in error.

out and have signed by the purchaser before the deed is delivered to him."

That thereafter, and before the deal was closed, plaintiff wrote Gould as follows:

"I have just received the abstract from our attorney and find it to be all right. We are not ready to close the deal, so please send the deed to the Byars State Bank with full instructions, and I will attend to the half interest in the oil and gas propositions."

That accordingly Gould signed the deed and mailed it to the Byars State Bank with instructions, and at the same time wrote plaintiff informing him that he had sent the deed to the bank, and in the letter in reference to the understanding providing for the retention of his interest in the land stated:

"Kindly see this deed is properly made out and executed and recorded at once before any other deed mortgage contract or lien is given by Mr. Milford, his heirs or assigns, affecting this land."

That Gould had relied wholly upon plaintiff Newbern, as his agent, to perform the promises contained in his letters to Gould, particularly with reference to the special form of the instrument whereby one-half interest was to be retained, and that the purchaser was aware of the terms and conditions upon which the land was to be sold. By reason thereof, the purchaser, M. B. Hawkins, became estopped from having or claiming any interest or right adverse to that of defendant as to the one-half interest in the mineral, coal, oil and gas rights, and from denying the reservation thereof by Charles P. Gould, and that plaintiff was likewise estopped because of his complete knowledge of the facts and of his participation in the transaction. She further pleaded estoppel by reason of the action of plaintiff as the agent of Charles P. Gould, in undertaking and agreeing to secure the reservation of said interest in said land for the said Charles P. Gould in making the sale and transfer of said land to Hawkins, and further alleged that plaintiff had, within three years next preceding the bringing of this action, acknowledged in writing, subscribed by him, that Charles P. Gould had retained and reserved such interest in said land. She prayed for a reformation of the deed so as to fully provide for the right of ingress and egress for the purpose of developing said lands for minerals, coal, oil, and gas so as to make the reservation intended by the parties fully effective.

Plaintiff replied by pleading the statute of limitation as against defendant's plea for reformation.

The cause was tried upon the issues thus joined, resulting in a general finding for defendant and decree reforming the deed as prayed for, reserving, however, to plaintiff full right to lease the land for oil, gas, etc., and the right to collect and retain all bonus money and annual rentals for such leases. From these findings and decree plaintiff appeals.

Plaintiff first contends that the "mineral deed" sought to be canceled is void and conveys no interest in the real estate in that it granted no surface rights, no easement or servitude, no privilege of ingress or egress to develop the premises for the mineral, coal, oil, and gas, and extract them. He cites and relies upon Morgan v. McGee, 117 Okla. 212, 245 P. 888.

It was therein held that a warranty deed, in statutory form, which merely granted and conveyed to the grantee all the petroleum, oil and natural gas and other minerals on and under the surface of the land without providing an easement or right of ingress or egress for the purpose of developing the land and without an agreement on the part of the grantees to develop, did not support an implied easement or right of ingress or egress, and, therefore, conveyed no interest in the land. In the body of the opinion it was said:

"When the owner of this unqualified fee conveys the same by a deed, excepting the minerals, he is merely conveying a part of his inheritable estate, and burdening the surface with an easement or servitude for his benefit in the enjoyment and use of the part retained."

And that:

"Equity will, by reason of the precedent unqualified ownership of the fee, imply such a privilege as an incident to the right retained."

A number of cases from this court are cited in support of the first of the rules stated above, and authority from this and other states is cited in support of the second rule. Both rules seem to be well settled in this state.

Defendant contends, however, that under the record, this case, in equity, comes within the latter rule, and that although the deed does not in terms provide for the easement, right of ingress and egress, the intention of all the parties at and prior to the execution of the deed was that Charles P. Gould should except or reserve to himself the one-

half interest in the land when he executed the deed which in fact conveyed all his interest. And that plaintiff himself well knew this intention, and that he, as agent of Gould, in carrying out the transaction actually intended and did believe at the time that such was the effect of the instruments of conveyance.

The record discloses that for a long time prior to December 4, 1918, Charles P. Gould was the unqualified owner of an estate of inheritance in the land; that he listed the land with plaintiff, who was a real estate agent, for sale with the proviso that should a sale be made, Gould was to retain one-half of the mineral, coal, oil and gas in and under the land. The negotiations leading up to the sale were conducted entirely by mail and the evidence fully supports the answer of defendant relative to the contents of the letters referred to therein, written by plaintiff and Charles P. Gould. The evidence clearly shows that it was the intention of Charles P. Gould, and a part of the consideration which induced him to part with his title, that he should retain or reserve a one-half interest in the minerals, including oil and gas. He instructed his agent, who it must be remembered was the plaintiff, to "except from the sale one-half of all gas, oil, coal and minerals." He also instructed his agent to prepare the papers accordingly, and stated in his letter, "I think there is some form which the law prescribes, but I have no blanks and I will leave it to you to see that everything is done right." Plaintiff wrote Gould an answer to the above, stating: "In regard to one-half interest in the oil, gas, minerals, etc., there is a special form on which to have this made which I will make and have signed by the purchaser before deed is delivered to him." Pursuant thereto, the instruments were prepared by plaintiff or under his directions. The instruments so prepared and executed were a general warranty deed from Gould to the purchaser, M. B. Hawkins, and the deed in question, the latter being executed by Hawkins and his wife and delivered at the same time the deed from Gould to him was delivered, and as a part of the same transaction. The intention of the parties could hardly have been made plainer. They were fully understood by plaintiff at the time. Thereafter plaintiff acquired the interest conveyed by Gould to Hawkins, and, of course, subject to the interest of Gould.

Plaintiff was a witness in his own behalf and was asked the following question relating to the deed in question: "Q. In so far as you had any connection with this instrument, it was your intention to have this instrument carry out in all its purposes the reservation to Mr. Gould, his heirs and assigns, an undivided one-half interest in the minerals?" His answer was: "Yes, sir, as far as I know." The deed from Gould to Hawkins was delivered to Hawkins without any opportunity of Gould to examine the instrument by which his rights to be reserved were provided. Plaintiff knew and understood what was expected by Gould, and he testifies that he undertook to and thought he had reserved the rights which Gould was to retain. Therefore, plaintiff, in all justice and equity, should not now assert that no interest was conveyed by the very instrument that he prepared or had prepared for the avowed purpose of retaining in Gould one-half the mineral, coal, oil and gas in and under the land. Plaintiff of all men ought not to be heard to say that defendant had not the rights contended for.

The right of defendant to have the instrument reformed is made clear unless barred by some act of defendant or by law.

Plaintiff contends, however, that the right to have the deed reformed is barred by the statute of limitations. Cases are cited holding that an action for relief based upon fraud must be commenced within two years after the discovery of the fraud. But defendant does not claim that fraud was practiced and does not base her claim for reformation upon fraud. Plaintiff does not contend that he practiced fraud in handling the transaction for Gould. Therefore, the cases cited and relied upon are not applicable.

The general rule seems to be, where reformation is sought as defensive matter, that "even though such an equitable defense is within the spirit of the statute, the statute does not begin to run against an equitable right to reform a deed until an attempt is made to assert the deed against the party in possession." 23 R. C. L. 353. This rule is in effect to say that the statute does not begin to run against the right to reform as a defense until a right is asserted against the defendant which requires him to ask for a reformation to protect his rights. Here no claim was ever asserted contrary to the clear intention of the parties to the original transaction, including plaintiff, until shortly before this action was commenced.

The controversy appears to have arisen because defendant had declined to join plaintiff in the execution of an oil and gas lease. Thereupon plaintiff commenced the action to cancel the deed. The right to re-

form was, therefore, not barred by the statute of limitation.

It is further contended that the reformation sought involves the correction of a mistake of law against which equity provides no relief.

It seems well settled in this jurisdiction that a mere mistake of law, not accompanied by other circumstances demanding équitable relief, constitutes no ground for reformation of a deed based upon such mistake. Barnett v. Douglas, 102 Okla. 85, 226 P. 1035; Campbell v. Newman, 51 Okla. 121, 151 P. 602. But the mistake here involved cannot be said to be a mere mistake of law against which equity will not afford a remedy by reformation. Under a sufficient showing of mutual mistake, or mistake on one side and fraud or inequitable conduct on the other, if by such mistake an estate or interest intended to be conveyed is enlarged, curtailed, or vests in a different manner from what the parties intended, the deed will be corrected and the omission of a reservation will be righted. 53 C. J. 962.

As pointed out, the record clearly shows mutual mistake. In addition thereto, the record shows inequitable conduct on the part of plaintiff which of itself entitles defendant to the relief prayed for. The mistake made was primarily attributable to plaintiff. He was the agent of Charles P. Gould and as such prepared the deed which clearly omitted provisions essential to effectuate the purpose and intent of the parties and particularly that of Mr. Gould. Plaintiff has since acquired the interest conveyed to Hawkins by Gould, and is now seeking to take advantage of the mistake for which he is responsible. His conduct in so doing is contrary to all the principles of equity.

Under the record, the judgment and decree should be, and is hereby, affirmed.

CULLISON, V. C. J., and SWINDALL, ANDREWS, BAYLESS, BUSBY, and WELCH, JJ., concur. OSBORN, J., disqualified, not participating. McNEILL, J., absent.